UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRANE DISTRIBUTION LLC,<br><br>                                        Plaintiff,<br><br>                    -against-<br><br>HARVEST GLOBAL INVESTMENTS, LTD. and<br>HARVEST FUND MANAGEMENT CO., LTD.,<br><br>                                        Defendants. | No. 14-CV-3589 (NRB) (FM)<br><br><br>ECF Case<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY
DEFENDANT HARVEST GLOBAL INVESTMENTS LIMITED
TO DISMISS THE COMPLAINT, OR,
IN THE ALTERNATIVE, FOR A STAY PENDING ARBITRATION**

OBERDIER RESSMEYER LLP

Carl W. Oberdier
Kellen G. Ressmeyer
655 Third Avenue, 28th Floor
New York, New York 10017
(212) 659-5141

*Counsel for Defendant Harvest Global
Investments, Limited*

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................ 1

    The Parties ................................................................................................3

    The Limited Liability Company Agreement .....................................................3

    The Formation of HK LLC ...........................................................................4

    The Operations of HK LLC...........................................................................5

    The Complaint's Repeated Attribution Of HUSA's Alleged Actions To HGI...................6

    Defendants' Alleged Vague, Unenforceable Promises........................................7

    HGI's Alleged Breach of Non-Existent Obligations ...........................................8

    KD's Suit Against HUSA and HGI In Delaware  Chancery
    Court Alleging Breach Of The LLC Agreement .........................................9

The Pending Arbitration Proceedings .......................................................................... 9

    HGI's and HUSA's Repeated Demands For Arbitration.....................................9

    The Chancery Court's Stay Of Proceedings Pending
    An Arbitral Ruling On Arbitrability .......................................................10

Argument.......................................................................................................11

    I.    This Court Lacks Subject Matter Jurisdiction Over This Dispute ...........................11

    II.    KD's Claims Must Be Arbitrated ........................................................13

        A.    The Arbitrators Must Decide Questions Of Arbitrability...............................15

        B.    Each of KD's Claims Is Arbitrable ...............................................16

            1.    KD's Tort Claims Are Arbitrable.............................................16

            2.    HGI's Status as a Limited Signator To The
                Contract Does Not Deprive It Of The Right To Arbitrate .................18

    III.    The Complaint Fails To State A Claim For Relief....................................19

        A.    The LLC Agreement Bars KD's Claims For Fraud .......................................19

        B.    Each of KD's Tort Claims Is Barred
            As Duplicative Of Its Contract Claims...............................................20

            1.    KD's Claim for Misappropriation is Duplicative.....................................21

            2.    KD's Claims For Unfair Competition (Count III)
                Conversion (Count IV), and Unjust Enrichment
                (Count V) and Are Duplicative .........................................22

3.   KD's Tortious Interference Claims
(Counts VI ad VII) Are Duplicative ....................................................22

C.   KD's Tort Claims Are Barred By Delaware Statute .......................................23

D.   KD's Conversion Claim Is Premature ............................................................23

E.   KD Lacks Standing To Recover For HK LLC's Injuries ...............................24

F.   Plaintiff Fails To State A Claim For Conspiracy ...........................................24

Conclusion ..........................................................................................................................24

# TABLE OF AUTHORITIES

**CASES**

*Alghanim v. Alghanim,*
    828 F. Supp. 2d 636 (S.D.N.Y. 2011) ................................................................. 14, 15, 17, 18

*Ardis Health, LLC v. Nankivell,*
    2012 WL 5290326 (S.D.N.Y. Oct. 23, 2012) ........................................................23

*B &C Realty, Co. v. 159 Emmut Props., LLC,*
    106 A.D.3d 653 (N.Y. App. Div. 2013) ................................................................22

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................19, 21

*Best Western Int'l v. CSI Int'l Corp.,*
    1994 WL 465905 (S.D.N.Y. Aug. 23, 1994) ........................................................21

*Borsack v. Chalk & Vermilion Fine Arts, Ltd.,*
    974 F. Supp. 293 (S.D.N.Y.1997 ..........................................................................18

*Brandle Meadows, LLC v. Bette,*
    84 AD3d 1579 (N.Y. App. Div. 2011) ..................................................................18

*Builders Group LLC v. Qwest Commc'ns Corp.,*
    2009 WL 3170101  (S.D.N.Y. Sept. 30, 2009) .....................................................15

*Camp Summit of Summitville, Inc. v. Visinki,*
    2007 WL 1152894 (S.D.N.Y. Apr. 16, 2007) .......................................................23

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,*
    117 F.3d 655 (2d Cir. 1997) .................................................................................17

*Contec Corp. v. Remote Solution Co.,*
    398 F.3d 205 (2d Cir. 2005) ...........................................................................15, 16

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd.,*
    923 F.2d 245 (2d Cir. 1991) .................................................................................19

*Ethypharm S.A. France v. Bentley Pharms.,*
    388 F. Supp. 2d 426 (D. Del. 2005) .....................................................................23

*First Eagle Sogen Funds, Inc. v. Bank for Int'l Settlements,*
    2001 WL 1150323 (S.D.N.Y. Sept. 28, 2001) .....................................................17

*GEM Advisors, Inc. v. Corp. Sidenor, S.A.,*
    667 F. Supp. 2d 308 (S.D.N.Y. 2009) ..................................................................12

*Genesco, Inc. v. T. Kakiuchi & Co.,*
    815 F.2d 840 (2nd Cir. 1987) ...............................................................................17

*Gidatex s.r.l. v. Campaniello Imports, Ltd.*,
  13 F. Supp. 2d 420 (S.D.N.Y. 1998)............................................................17

*Grunblatt v. UnumProvident Corp.*,
  270 F. Supp. 2d 347 (E.D.N.Y. 2003).........................................................13

*JHH Pictures, Inc. v. Rawkus Ent. LLC*,
  739 N.Y.S.2d 26 (N.Y. App. Div. 2002)......................................................22

*JLM Indus. Inc. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004) ........................................................................17

*Joe Hand Promotions, Inc. v. Zyller*,
  2014 WL 59979 (E.D.N.Y. Jan. 7, 2014)....................................................23

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
  174 F.3d 907 (7th Cir. 1999). ......................................................................17

*Kirch v. Liberty Media Corp.*,
  2004 WL 2181383 (S.D.N.Y. Sept. 27, 2004) ...........................................24

*Krisel v. Duran*,
  258 F. Supp. 845 (S.D.N.Y. 1966)...............................................................13

*Landesbank v. Aladdin Capital Mgmt. LLC*,
  692 F.3d 42 (2d Cir. 2012) ..........................................................................12

*Levy v. Plastocks, Inc.*,
  744 F. Supp. 570 (S.D.N.Y. 1990)...............................................................13

*Lewis Tree Servs., Inc. v. Lucent Techs., Inc.*,
  239 F. Supp. 2d 332 (S.D.N.Y. 2002)..........................................................15

*Lucas v. Oxigene, Inc.*,
  1995 WL 520752 (S.D.N.Y. Aug. 31, 1995).................................................20

*McLaughlin v. McCann*,
  942 A.2d 616 (Del. Ch. 2008) .....................................................................19

*Metro Comm'n Corp. BVI v. Adv. Mobilecomm'n Tech., Inc.*,
  854 A.2d 121 (Del. Ch. 2004) .....................................................................24

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985).....................................................................................17

*Morrison v. Nat'l Austl. Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008) ........................................................................11

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983).........................................................................................14

*MTI/The Image Gp., Inc. v. Fox Studios East, Inc.*,
  262 A.D.2d 20 (N.Y. App. Div. 1999) ................................................................. 23

*Navarro Sav. Ass'n v. Lee*,
  446 U.S. 458 (1980) ................................................................. 12

*Neiman Marcus Gp., Inc v. Dispatch Transp. Corp.*,
  2011 WL 1142922 (S.D.N.Y. Mar. 17, 2011) ................................................................. 12

*Nulife Ent., Inc. v. Torres*,
  698 F. Supp. 2d 409 (S.D.N.Y. 2010) ................................................................. 15

*Oldroyd v. Elmira Sav. Bank, FSB*,
  134 F.3d 72 (2nd Cir. 1998) ................................................................. 14

*Oracle Am., Inc. v. Myriad Group A.G.*,
  724 F.3d 1069 (9th Cir. 2013) ................................................................. 16

*Orange County Choppers, Inc. v. Olaes Enterps., Inc.*,
  497 F. Supp. 2d 541 (S.D.N.Y. 2007) ................................................................. 22

*Ragone v. Atl. Video at Manhattan Ctr.*,
  595 F.3d 115 (2d Cir. 2010) ................................................................. 18

*Republic of Ecuador v. Chevron Corp.*,
  638 F.3d 384 (2d Cir. 2011) ................................................................. 16

*Rothman v. Gregor*,
  220 F.3d 81, 88-89 (2d Cir. 2000) ................................................................. 3

*Sandrino v. Michaelson Assocs., LLC*,
  2012 WL 5851135 (S.D.N.Y. Nov. 19, 2012) ................................................................. 21

*Schneider v. Kingdom of Thailand*,
  688 F.3d 68 (2d Cir. 2012) ................................................................. 16

*Sloan v. Truong*,
  573 F. Supp. 2d 823 (S.D.N.Y. 2008) ................................................................. 12

*Stephenson v. Citco Gp., Ltd.*,
  700 F. Supp. 2d 599 (S.D.N.Y. 2010) ................................................................. 24

*Strawbridge v. Curtiss*,
  7 U.S. 267 (1806) ................................................................. 12

*Tasini v. New York Times Co.*,
  184 F. Supp. 2d 350 (S.D.N.Y. 2002) ................................................................. 11

*Trautz v. Weisman*,
  809 F.Supp. 239 (S.D.N.Y. 1992) ................................................................. 24

*Trump Int'l Hotel & Tower v. Carrier Corp.*,
    524 F. Supp. 2d 302 (S.D.N.Y. 2007)...........................................................................20

*TVT Records v. Island Def Jam Music Gp.*,
    412 F.3d 82 (2d Cir. 2005) ..........................................................................................22

*United Steel Workers of America v. Warrior & Gulf Nav. Co.*,
    363 U.S. 574 (1960)......................................................................................................15

*Valassis Communc'ns, Inc. v. Weimer*,
    304 A.D.2d 447 (N.Y. App. Div. 2003)......................................................................20

*World Wide Commnc'ns., Inc. v. Rozar*,
    1997 WL 795750 (S.D.N.Y. Dec. 30, 1997)...............................................................22

## STATUTES

28 U.S.C. § 1332(c)(1).........................................................................................................12

Delaware Uniform Trade Secrets Act,
    6 DEL. CODE ANN. § 2007(a).......................................................................................23

Federal Arbitration Act,
    9 U.S.C. § 1.................................................................................................................14

Federal Arbitration Act,
    9 U.S.C. § 3...................................................................................................................1

## OTHER AUTHORITIES

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
    dated June 10, 1958, 21 U.S.T. 2517 (entered Dec. 29, 1970)...................................14

New York Arbitration Convention, *at* http://www.newyorkconvention.org/contracting-states/list-of-contracting-states (last visited September 19, 2014).......................................................14

## RULES

FED. R. CIV. P 12(b)(1)................................................................................................1, 13

Federal Rule of Civil Procedure 12(b)(6).....................................................................1, 3, 15

Federal Rule of Civil Procedure 9(b) ...............................................................................1

Federal Rules of Civil Procedure 8(a)(2) ........................................................................1

UNCITRAL Arbitral Rules  Art. 23(1) (2010)................................................................16

Defendant Harvest Global Investments Limited ("**HGI**") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Complaint, pursuant to FED. R. CIV. P. 12(b)(1), and 12(b)(6); or Alternatively, Stay the Action, pursuant to the Federal Arbitration Act ("**FAA**"), 9 U.S.C. § 3.[1]

## PRELIMINARY STATEMENT

Since HGI's letter requesting a pre-motion conference, dated July 21, 2014 (Dkt. 6), the issue to be resolved by this Court has been narrowed to a single formality. This Court need only confirm, as the Delaware Court of Chancery has already held in KD's pending, duplicative lawsuit against HGI and its corporate subsidiary, that KD's claims against HGI in this action, including KD's objections to arbitrability, are subject to pending mandatory arbitration already commenced by HGI. Although KD nominally asserts tort claims in this action, its factual allegations are virtually identical to those in its contract action in Delaware. All of KD's claims in both lawsuits "arise out of" and are "connected with" the parties' contract, as the parties' broad arbitration agreement requires.

Alternatively, the Court should dismiss this action for lack of subject matter jurisdiction. KD seeks to fabricate diversity jurisdiction by failing to name as a defendant in this action HGI's co-defendant in Delaware, its subsidiary Harvest USA, Inc. ("**HUSA**"), with which KD is non-diverse. But KD merely repeats the same allegations against HGI in this lawsuit that it makes against HUSA in Delaware, contending that HGI committed these wrongful acts "through HUSA," a "shell company" that HGI created as a "vehicle for fraud." In other words, KD alleges that HUSA and HGI are alter egos, and seeks to hold HGI liable for the acts of HUSA. It

---

[1] KD's Complaint (Dkt. 2) is attached as Exhibit A to the Declaration of Kellen G. Ressmeyer, sworn to on Sept. 19, 2014 ("**R. Dec.**").

is well settled that such allegations require imputation of HUSA's jurisdictional contacts to HGI, thus destroying this Court's diversity jurisdiction.

Finally, KD's claims in this case—for fraudulent inducement, misappropriation of proprietary information, unfair competition, conversion, unjust enrichment, tortious interference, and conspiracy—are barred by the parties' contract and otherwise fail to state a claim.  KD's claims arise from a business disagreement between KD and its co-shareholder, HUSA, in their underperforming Delaware limited liability company.  KD and HUSA entered into this venture to distribute Chinese investment products managed by HGI.  In brief, KD blames HGI for having elected not to increase voluntarily the number of investment products distributed by KD and HUSA's venture, even though HGI was under no contractual or legal obligation to do so.  None of KD's claims can stand on its own as an independent tort:  Each depends on KD's view that, despite the absence of any express contractual provision, HGI was nonetheless obligated to offer additional products for distribution by the KD-HUSA venture, including products that the parties' shareholder agreement specifically excluded.  As a well-settled matter of New York law, such tort claims that are disguised contract claims cannot survive.  Moreover, KD's claims each arise either from HGI's alleged oral misrepresentations that are barred by the strict merger clauses of the parties' agreement, or from HGI's lawful business conduct that was not in violation of any provision of the parties' contract.  Finally, KD's tort claims, which are based on common law torts yet seek relief for HGI's alleged misappropriation of KD's unspecified proprietary business information and know-how, are preempted by Delaware's Uniform Trade Secret Act, which precludes any state or common law claim based on alleged misappropriation of trade secrets or other proprietary information.

For these reasons, HGI respectfully moves this Court to dismiss KD's lawsuit or, alternatively, stay it pending arbitration.

## THE COMPLAINT'S ALLEGATIONS[2]

### *The Parties*

HGI is a Hong Kong company headquartered in Hong Kong with a "business presence" in New York City. ¶ 11.[3] HGI is the sole shareholder of Harvest USA ("**HUSA**"), a Delaware corporation headquartered in New York. *Id*. HUSA is KD's co-shareholder in Harvest Krane LLC ("**HK LLC**"), a Delaware LLC that is the focus of this litigation. ¶¶ 2, 4. HGI's alleged "business presence" in New York is actually HUSA's home office. *Compare* ¶ 11 *with* R. Dec. Ex. B (Delaware Amended Complaint ("**Del**")) ¶ 6.

KD is, like HUSA, a Delaware LLC with its principal place of business in New York. ¶ 10. KD was established for the purpose of forming HK LLC. ¶ 10. KD's majority members are Jonathan Krane ("**JKrane**") and Jennifer Krane Tarleton. *Id*.

### *The Limited Liability Company Agreement*

KD and HUSA formed HK LLC, as co-shareholders, for the purpose of distributing Chinese investment products, such as mutual funds, managed by HGI, pursuant to the parties' Limited Liability Company Agreement ("**LLC Agreement**"). ¶ 5; R. Dec., Ex. C. However, KD agreed that HGI would not participate as a shareholder in the Company or undertake any

---

[2] HGI denies all allegations of wrongdoing asserted in the Complaint; its recitation of the Complaint's non-conclusory allegations is pursuant to the requirements set forth in FED. R. CIV. P. 12(b)(6). HGI also relies on the LLC Agreement and other documents expressly referred to in the Complaint as integral to KD's claims. *See Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000) (authorizing consideration of statements or documents incorporated in the complaint by reference, SEC filings, and documents relied upon by plaintiff in bringing suit). *Accord ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[3] Citations to "¶ __" refer to the numbered paragraphs in the Complaint (Dkt. 2).

obligations relating to the Company's management, operations, or financing.  *See* LLC Agreement, *Preamble*, page 1, Whereas Cl., page 29. Instead, KD expressly agreed to accept HUSA as its sole co-shareholder and contract counterpart for those purposes. HGI signed the LLC Agreement "***solely for purposes of Clauses 13.4, 13.5, and 13.7***"—non-compete and non-solicitation terms that KD has not placed at issue here.  LLC Agreement, *Whereas Cl.*, *id.* at 29 (emphasis added).

Under the LLC Agreement, HGI was not charged with any direct involvement in managing or funding the operations of HK LLC. Although the LLC Agreement contemplated that HGI would provide Chinese investment products for distribution by HK LLC, the responsibility for procuring such products lay with HUSA. *See* LLC Agreement, Cl. 5.4. Moreover, KD agreed that any failure to provide such products would not be considered a breach. *See id*.

HUSA's primary contribution to the joint venture was the provision of 80% of its initial capital funding. *See* LLC Agreement, Cl. 4. KD's primary contribution was to manage the LLC and provide expertise in U.S. capital markets. ¶ 5. Accordingly, KD's principal shareholder, Jonathan Krane ("**JKrane**") was named chief executive officer ("**CEO**") of HK LLC.

### *The Formation of HK LLC*

The joint venture was conceived, proposed, and marketed to HGI by JKrane (¶¶ 16-17), who claimed to have the experience and capability to distribute HGI's investment products in the United States.  ¶ 18. Starting in 2010, JKrane solicited meetings in Hong Kong and Beijing with "Harvest's" representatives to discuss the concept of marketing Harvest's mutual fund products

in the United States. ¶¶ 16-17, 20.[4] To induce Harvest to agree to his proposal, and ***with no confidentiality agreement in place***, JKrane volunteered to Harvest its business plans, financial projections, product strategies, surveys of the competitive and consumer landscape in the U.S., and details on operations management, personnel, distribution channels and service providers. ¶ 22.

Discussions about JKrane's proposal were sporadic through 2011, but then resumed in earnest in late 2011, leading to the signing of a Letter of Intent ("**LOI**") in or around January 2012. ¶ 38.  In May 2012, HUSA and KD, as shareholders of the newly formed HK LLC, executed the LLC Agreement.  Under that Agreement, non-party HUSA—not HGI—was responsible for capital contributions to, and nominating directors of the board of, HK LLC. *See* Cls. 4.1.1, 4.1.3(i).

### *The Operations of HK LLC*

As of this date, however, two years after HK LLC began operating, it has launched only one fund (Harvest Fund Intermediate Bond ("**HFIB**") (¶ 69)) and is operating at a substantial loss. *See* ¶¶ 51, 92. Although KD was principally responsible for HK LLC's operations and financial performance (Cl. 5.5), it has filed two lawsuits demanding that HGI account for HK LLC's underperformance. The crux of KD's claims is that HGI sabotaged its own joint venture in order to buy out KD's rights in HK LLC at a reduced price and transfer KD's vast financial knowledge to Deutsche Bank. KD claims, in essence, that HGI deliberately sabotaged HK LLC in order to drive it into insolvency, thereby allowing HGI to misappropriate KD's proprietary

---

[4] "Harvest" and "Defendants" are defined as including only HGM and HGI, not HUSA. *See* Compl., Introductory paragraph.

business information and methods, possibly buy out KD's rights in HK LLC at a reduced price, and transfer its business secrets to Deutsche Bank. *See* ¶¶ 50-51, Del. ¶ 3.

### **The Complaint's Repeated Attribution Of HUSA's Alleged Actions To HGI**

Throughout the Complaint, KD accuses HGI of breaching obligations of HUSA under the LLC Agreement and taking actions that, if at all, could only have been taken by HUSA.  Indeed, in KD's nearly identical complaint in Delaware, most of the actions attributed to HGI in this case are attributed to HUSA in that case.  Here, other than a non-specific conclusory allegation in KD's recitation of its claims (¶¶ 164, 169), the Complaint never alleges any breach by HUSA.

In the Complaint, the bad faith conduct alleged against HUSA is attributed to HGI.  *See id*. ¶ 6 ("[HGI and HFM] entered into the LLC Agreement in bad faith with the intent of using the Company only as a sham vehicle . . . in order to unlawfully misappropriate [KD's] valuable intellectual property" *cf*. Del. ¶ 3 ("Acting through Harvest USA, the Harvest entities . . . conducted [themselves] in bad faith"); ¶ 8 ("[HUSA and HGI] are poised to complete the "switch" by engaging in full sabotage of the joint venture" *cf*. Del. ¶ 3 "[HUSA and HGI] engaged in numerous breaches of the LLC Agreement and outright sabotage of the Company business .  . in order to . . .allow[] HUSA and HGI to recover the exclusive business grants granted to the Company"); ¶ 47 ("Harvest actively mismanaged the Company . . . deliberately engag[ing] in a course of conduct designed to make the success of [HK LLC] an impossibility;" *cf*. Del. ¶ 73 ("[HUSA and HGI] continued to interfere with the Business and sabotage the Company's success"); ¶ 50 ("HGI executed the LLC Agreement in bad faith, with no intent to honor the terms of the LLC Agreement or the Business Plan, and for the purpose of obtaining and misappropriating KD's confidential and proprietary information"), *cf*. Del. ¶ 45 ("Harvest USA and HGI executed the LLC Agreement in bad faith, with no intent to honor the terms of the LLC Agreement[.]"); ¶ 78 (HGI's CEO "continuously and systematically sabotaged KD's efforts

to launch new products"), *cf.* Del. ¶¶ 17, 77 ("The Chief Executive Officer of Harvest USA is Mr. Peng Wah Choy, . . . Mr. Choy had continuously and systematically sabotaged KD's efforts to launch new products."); ¶ 82 ("the Board of the Company, led by Mr. Choy and the Harvest majority, terminated Mr. Krane's employment as CEO, without cause."), *cf.* Del. ¶ 86 (same)); ¶ 83 ("Harvest terminated Mr. Krane's employment because it simply did not want to pay the Kranes the promised compensation, and/or for the reason that Harvest was embarrassed and unhappy that KD had partnered . . . with another Chinese asset management company[.]"), *cf.* Del. ¶ 87 (same)); ¶ 85 ("[HGI and HFM] with[held] its December 31, 2013 capital contribution[.]"), *cf.* Del. ¶ 89 (same); ¶¶ 86-87 (Harvest terminated other Company executives and employees without cause), *cf.* Del. ¶¶ 90-91 (same)); ¶¶ 89-91 (business plan presented by Company's CEO to the board was rejected by Harvest), *cf.* Del. ¶¶ 93-95 (same)).

### *Defendants' Alleged Vague, Unenforceable Promises*

The Complaint is replete with alleged vague oral promises, made prior to the execution of the LLC Agreement, by which KD (and/or its individual members, *see* ¶¶ 34, 81) was "induced" to enter the LLC Agreement. These "promises" include that KD's shareholders would be "provided salary and bonuses necessary to fund future capital calls" (¶ 36), and that HGI would "eventually buy out KD's equity shares" for "approximately $20 million" (¶ 37). The Complaint does not explain, however, how such pre-signing promises, even if they had been made, could survive Clause 24 and its subparts of the LLC Agreement, which provide:

> 24. Entire Agreement
>
> 24.1 This Agreement and each document referred to in it constitutes the entire agreement and supersedes any previous agreements between the Parties relating to the subject matter of this Agreement.
>
> 24.2 ***Each Party acknowledges and represents that it has not relied on or been induced to enter into this Agreement*** by a representation, warranty or undertaking (whether contractual or

otherwise) given by the other Parties other than as set out in this Agreement or each document referred to in it. (emphasis added).

24.3 *The Parties acknowledge and represent that they have not relied on or been induced to enter into this Agreement* by any representation, warranty or undertaking (whether contractual or otherwise) given by the other Parties or any adviser or provider of finance to the other Parties (emphasis added).

### *HGI's Alleged Breach of Non-Existent Obligations*

The Complaint also complains that HGI repeatedly took actions against the interests of the Company without ever pointing to any contract obligating HGI to do otherwise. ¶¶ 46, 96. KD's examples of "sabotage" include, for instance, that HGI declined to pay various fund-related expenses and distribution fees, without identifying any obligation, contractual or otherwise, obligating it to do so. ¶ 48. KD also alleges that HGI offered the Company only one fund for distribution, which was allegedly delayed (¶¶ 60-68), yet points to no contract obligating HGI to offer even one fund, let alone more than one.  Plaintiff also points to other vague sources of "delay and obstruction," including "cost containment measures," without providing any details or specifying why such measures were anything more than legitimate business decisions. *See* ¶¶ 57, 61.

Bizarrely, the Complaint devotes *over six full pages* (¶¶ 7, 44-45, 56, 83, 93, 99-123, 150) to HGI's refusal to offer an exchange traded fund ("**ETF**") to the Company for distribution and its partnership with Deutsche Bank to distribute an ETF, even though, as the Complaint admits, the LLC Agreement specifically excluded ETFs from HK LLC (¶ 40), and KD itself entered into a competing ETF business with an HGI competitor. ¶ 83.[5]

---

[5] KD claims vaguely that it revealed its proprietary strategies regarding ETFs to HGI, but never describes what those strategies might be, or that KD made any effort to keep them confidential. KD admits that ETFs were explicitly excluded from the Company's business and never alleges that it revealed its "proprietary" ETF strategies pursuant to any confidentiality agreement.

*KD's Suit Against HUSA and HGI In Delaware*
*Chancery Court Alleging Breach Of The LLC Agreement*

The day after KD commenced this suit, it filed a separate case in the Court of Chancery of the State of Delaware against HUSA and HGI (the "**Delaware Action**"), alleging substantially similar facts as those asserted here but asserting claims for breach of contract and breach of the covenant of good faith and fair dealing. Indeed, at least *half* of the paragraphs in KD's Complaint in this action are identical or substantially similar to its original complaint in the Delaware Action. But in the Delaware Action, unlike in this action, KD asserts that HUSA and HGI *both* materially breached the Agreement. *See supra.*

## THE PENDING ARBITRATION PROCEEDINGS

### *HGI's and HUSA's Repeated Demands For Arbitration*

The LLC Agreement contains a broad, mandatory arbitration clause (the "Arbitration Clause"), which provides:

> 28.1  In the event of *any dispute, controversy or claim* arising from or connected with this Agreement, *including one regarding* the existence, validity or *termination of such agreement or the consequences of its nullity* ("Dispute"), any Party may give notice of such Dispute in writing to the relevant Party to this Agreement, following which a period of 21 days shall commence (which period may be extended by written agreement of the Parties) during which the Parties may seek to resolve the Dispute amicably by negotiation or other means.

> 28.2  After the period of 21 days specified in Clause 28.1 (or such extended period as may have been agreed in accordance with Clause 28.1), if the Dispute has not bee resolved, then any Party ("Plaintiff Party") may, after expiry of the time period in Clause 28.1, immediately commence arbitration by serving a notice in writing

---

Indeed, KD concedes that as of January 2013 it was aware that "Harvest" had partnered with Deutsche Bank and filed an A Share ETF with the SEC, yet KD continued to negotiate with Harvest a "potential RQFII/QFII mutual fund product throughout early 2013"—*without requiring HGI to first enter into any confidentiality agreement*. ¶¶ 110, 113.

("Notice of Dispute") stating the nature of the dispute, to such Party ("Defendant Party").

28.3 *Upon service of the Notice of Dispute, such Dispute shall be referred to and finally resolved by arbitration* in accordance with the UNCITRAL Arbitration Rules as at present in force and as may be amended by the rest of this Clause 28 . . .

On April 7, 2014, HGI and HUSA's counsel duly demanded that KD submit its claims to arbitration. R. Dec., Ex. I. KD ignored their demand. R. Dec., Ex. J. On July 15, 2014, after KD had commenced its lawsuits, HGI and HUSA sent KD a second notice demanding that KD withdraw its lawsuits and pursue arbitration. R. Dec., Ex. K. KD refused to do so.

Finally, after KD took the position before the Delaware Court that HGI's and HUSA's prior demands were ineffective, and that KD was entitled to ignore the arbitration clause of the LLC Agreement and litigate its claims in court, HGI and Defendants served a notice of arbitration under Clause 28.2 on August 11, 2014. R. Dec., Ex. L (the "**Notice of Arbitration**"). KD's counsel "acknowledged that this [August 11 Notice] [wa]s a notice of dispute letter under 28.2." R. Dec., Ex. M (Aug. 11, 2014 Transcript of Proceedings ("**Aug. 11 Tr.**")) at 11:17-22. KD continued to argue, however, that Clause 28 was purely voluntary and that, as the first to file its claims, it had the right to elect either arbitration or litigation. *KD acknowledged that its position was contrary to "the federal lines of cases" (including authorities of this Court and the Second Circuit)*. R. Dec., Ex. P (Aug. 22, 2014 KD Ltr. to Court) at 3 n.2.

Even though the Arbitration Clause is governed by the FAA, KD urged the Delaware Chancery court to ignore these federal authorities and "issue some definitive authority on this issue." R. Dec., Ex. N (Aug. 13, 2014 KD Ltr. to Court ("**Aug. 13 Ltr**")).

### *The Chancery Court's Stay Of Proceedings Pending An Arbitral Ruling On Arbitrability*

The Chancery Court rejected KD's position, holding that Clause 28 mandates "the arbitration of all disputes," and that KD's contention that arbitration was discretionary was

"contrary to the plain language of the provision." R. Dec., Ex. Q (Aug. 26, 2014 Transcript of Proceedings ("**Aug. 26 Tr.**")) at 6:8-9. The Chancery Court also rejected KD's assertion that the claims against HGI were not arbitrable, even though HGI signed the LLC Agreement "solely" for purposes of Clauses 13.4, 13.5 and 13.6:

> Since the plaintiff's amended complaint relies on the applicability of the entire LLC Agreement to defendants, in my view, ***[KD] logically is precluded from adopting this argument at this stage of the litigation***. Even so, since, as I have found, the arbitration clause is both broad in scope and refers to a set of arbitration rules giving the arbitrator jurisdiction to decide issues of arbitrability, under *Willie Gary* and its progeny, this issue is one properly for the arbitrator, and I do not reach it here. (emphasis added).

*Id.* 10:11-20 (emphasis added). Accordingly, the Chancery Court has stayed the Delaware Action pending an arbitral ruling on jurisdiction, noting that "if the arbitrator decides in favor of the arbitration, and **this action will be dismissed at that time**." *Id.* 11:12-14 (emphasis added).

On September 10, 2014, KD responded to the Notice of Arbitration. *See* R. Dec., Ex. U.

## ARGUMENT

### I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS DISPUTE

KD has failed to establish that this Court has subject matter jurisdiction over this dispute. *Tasini v. New York Times Co.*, 184 F. Supp. 2d 350, 353 (S.D.N.Y. 2002) ("The burden is on the plaintiff asserting jurisdiction to prove by a preponderance of the evidence that jurisdiction is proper."). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted)). Diversity jurisdiction is the sole basis for jurisdiction set forth in the Complaint (¶ 13), yet diversity of citizenship is lacking.

KD attempts to establish diversity jurisdiction by the simple dodge of attributing acts of HUSA (which is non-diverse) to its diverse parent, HGI. HUSA is a Delaware corporation

headquartered in New York, and is therefore deemed a citizen of both states. ¶¶ 10-11; 28 U.S.C. § 1332(c)(1). KD, a Delaware LLC, takes the citizenship of each of its members. *See Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). The Complaint does not allege the citizenship of KD's members, but at least one of them, Jonathan Krane, appears to be a resident of New York. *See* R. Dec., Exs. F-H. KD and HUSA thus share New York citizenship and are not diverse. *Neiman Marcus Gp., Inc v. Dispatch Transp. Corp.*, 2011 WL 1142922, at *2 n.5 (S.D.N.Y. Mar. 17, 2011) ("Since *Strawbridge v. Curtiss*, 7 U.S. 267 (1806), we have read the statutory formulation 'between . . . citizens of States' to require complete diversity between all plaintiffs and all defendants .") (Buchwald, J.).[6]

To create the illusion of diversity, KD has sued HUSA's corporate parent, HGI, rather than HUSA. Yet KD has verified *under oath* that HUSA is a "*shell company*" created by HGI as a "vehicle" to defraud KD. *See* Del. ¶ 2. *See also* ¶ 2. KD thus affirmatively alleges that HGI is HUSA's alter ego. *See GEM Advisors, Inc. v. Corp. Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) ("when veil piercing is only being used to assert jurisdiction, *the question is only whether the allegedly controlled entity 'was a shell'* for the allegedly controlling party." (internal quotation marks and citations omitted) (emphasis added)); *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.").

KD repeatedly seeks to hold HGI liable for actions taken, or allegedly taken, by HUSA, contending, *e.g.*, that HGI "acted through HUSA" to defraud or injure KD (Del. ¶ 3), and that

---

[6] The Court may consider evidence outside the pleadings in determining whether it has subject matter jurisdiction. *See Sloan v. Truong*, 573 F. Supp. 2d 823, 827 (S.D.N.Y. 2008) ("In considering a motion to dismiss for lack of subject matter jurisdiction, federal courts "need not accept as true contested jurisdictional allegation. . . . Rather, a court may resolve disputed jurisdictional facts by referring to evidence outside the pleadings, such as affidavits.").

"Defendants entered into the LLC Agreement in bad faith with the intent of using the Company only as a **sham vehicle** . . . in order to unlawfully misappropriate [KD's] valuable intellectual property" (¶ 6 (emphasis added)). These are precisely the same allegations that KD alleges against HUSA in the Delaware action. *See* p. 6-7, *supra*. Yet, in this case, KD only conclusorily alleges that HUSA itself did anything wrong (¶¶ 164, 169), even though HUSA is the primary Harvest entity with which KD is in privity.

Both because KD alleges that HGI is HUSA's alter ego, and because HGI is being sued as a result of actions by its subsidiary, HGI is deemed to have the same Delaware incorporation and New York headquarters as HUSA. *See Grunblatt v. UnumProvident Corp.*, 270 F. Supp. 2d 347, 352-53 (E.D.N.Y. 2003) ("if a parent were sued as a result of activities of a subsidiary, the alter ego doctrine would attribute the subsidiary's place of incorporation to the parent even if such resulted in destroying complete diversity" (citation omitted)).

In sum, KD's allegations, taken as true, would impute HUSA's New York residency to HGI, rendering HGI non-diverse with KD, and thus this Court lacks subject matter jurisdiction over this case. *See Levy v. Plastocks, Inc.*, 744 F. Supp. 570 (S.D.N.Y. 1990) (allegation that defendant is alter ego of New York residents destroys diversity); *Krisel v. Duran*, 258 F. Supp. 845, 856 (S.D.N.Y. 1966) ("EDA was acting as the agent and alter ego of the Commonwealth and that the Commonwealth is the real party in interest; accordingly, the defendant's motion under Rule 12(b)(1) to dismiss for lack of jurisdiction over the subject matter based upon non-diversity of citizenship is granted").

## II.    KD'S CLAIMS MUST BE ARBITRATED

KD's claims against HGI must also be dismissed because they are subject to mandatory arbitration, as the Delaware Chancery Court has already held. *See* Aug. 26 Tr. at 10:11-20 (rejecting KD's argument that HGI is not entitled to arbitrate as a party to the LLC Agreement

only for limited purposes, because "[KD's] amended complaint relies on the applicability of the entire LLC Agreement to [HGI]."). The Arbitration Clause provides broadly for the arbitration of "any dispute, controversy or claim arising from or connected with this Agreement, including one regarding the existence, validity or termination of such agreement or the consequences of its nullity. . . ." Cl. 28.1. KD's claims, which are factually identical to those alleged in its Delaware Action, plainly "arise from" and are "connected with" the LLC Agreement.[7]

The FAA reflects "a liberal federal policy favoring arbitration agreements." *Alghanim*, 828 F. Supp. 2d at 646 (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). In "accordance with that policy," courts are required to "'construe arbitration clauses as broadly as possible," and resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Id.* at 653 (citing *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 78 (2nd Cir. 1998)). As such, federal courts must enforce an arbitration agreement "'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that

---

[7]Chapter 1 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, applies to the Arbitration Clause because the LLC Agreement involves interstate commerce (distribution of Chinese investment products in the United States and Canada). *See* 9 U.S.C. § 1. This Court also has jurisdiction to enforce the Arbitration Clause under Chapter 2 of the FAA, which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, dated June 10, 1958, 21 U.S.T. 2517 (entered Dec. 29, 1970) (the "**Convention**"). "[A] district court has jurisdiction to enforce an arbitration agreement pursuant to the Convention where that arbitration agreement "(1) is a 'written agreement'; (2) 'provide[s] for arbitration in the territory of a signatory of the [C]onvention'; (3) is 'commercial' in its subject matter; and (4) is not 'entirely domestic in scope." *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 643 (S.D.N.Y. 2011) (Buchwald, J.) (citation omitted)). The Arbitration Clause is (1) "written;" (2) provides for arbitration in Hong Kong (which, as the People's Republic of China ("**PRC**") has confirmed, is included in the PRC's ratification of the Convention, *see* New York Arbitration Convention, *at* http://www.newyorkconvention.org/contracting-states/list-of-contracting-states (last visited September 19, 2014); (3) is "commercial," in that it involves the distribution of investment products; and (4) is not "entirely domestic" in that HGI, a limited signatory to the LLC Agreement, is a Hong Kong company, and the Agreement expressly contemplates distribution of HGI's investment products in the United States and Canada. *See* Cl. 5.1.1.

covers the asserted dispute.'" *Id*. (collecting cases). "In the absence of any express provision

excluding a particular grievance from arbitration, . . . only the most forceful evidence of a

purpose to exclude the claim from arbitration can prevail, particularly where . . .  the exclusion

clause is vague and the arbitration clause quite broad." *United Steel Workers of America v.*

*Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584-85 (1960).

Where a valid arbitration agreement exists, Courts are empowered to dismiss the action

under Rule 12(b)(6). Indeed, "'[a] district court may dismiss a suit where all of [the] plaintiff's

claims against [the defendant] are subject to arbitration,' even if the defendants have not moved

to dismiss." *Nulife Ent., Inc. v. Torres*, 698 F. Supp. 2d 409, 414 (S.D.N.Y. 2010) (quoting

*Builders Group LLC v. Qwest Commc' ns Corp.*, 2009 WL 3170101 at *6 (S.D.N.Y. Sept. 30,

2009)); *Lewis Tree Servs., Inc. v. Lucent Techs., Inc.*, 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002)

(if "no useful purpose will be served by granting a stay" the action should be dismissed).

## A.    The Arbitrators Must Decide Questions Of Arbitrability

Presumably KD will argue that its claims against HGI are not arbitrable, either because

(contrary to its own pleadings), HGI was not a signatory to Arbitration Clause (having signed the

LLC Agreement "solely for purposes of Clauses 13.4, 13.5, and 13.7") or because KD's tort

claims are not within the scope of the arbitration clause. Any such objections to the arbitrators'

jurisdiction, however, must be decided by the arbitrators.

While questions of substantive arbitrability (relating to the scope of an arbitration

provision and its applicability to a given dispute) are presumptively decided by courts, that

presumption yields "if there is clear and unmistakable evidence from the arbitration agreement,

***as construed by the relevant state law***, that the parties intended that the question of arbitrability

shall be decided by the arbitrator." *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d

Cir. 2005) (referring to the arbitrators question whether non-signatory could enforce the

15

arbitration clause). The Delaware Court, construing the Arbitration Clause as governed by Delaware law, already held that the parties clearly and unmistakably intended questions of arbitrability (including KD's claims against HGI) to be decided by the arbitrators. *See* Aug. 26, Tr. at 9-10.[8] Consistent with courts' approach in this Circuit, the Delaware Court noted that the Arbitration Clause is broad because it "generally provides for the arbitration of all disputes," *id.* at 7:8-9, and incorporates the UNCITRAL Rules, which empower the arbitrators to rule on their own jurisdiction. *See id.* at 7:4-16 (citing *James & Jackson, LLC v. Willie Gary* LLC, 906 A.2d 76, 80 (Del. 2006)), R. Dec., Ex. V (UNCITRAL Arbitral Rules (2010) ("**UNCITRAL Rules**")) at Art. 23(1). *See also Contec*, 398 F.3d at 211 ("[A] signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules [which empower the arbitrators to rule on their own jurisdiction] cannot now disown its agreed-to obligation to arbitration *all* disputes, including the question of arbitrability." (emphasis in original)).

### B.   Each of KD's Claims Is Arbitrable

If, contrary to the arguments above, the Court determines that it should address whether KD's claims are arbitrable, it should hold that KD's objections to arbitration are without merit.

#### 1.   KD's Tort Claims Are Arbitrable

Tort claims such as KD's that are connected with the parties' contractual relationship are routinely held arbitrable. The factual allegations underlying a dispute, not the legal theories asserted, determine arbitrability. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2nd Cir.

---

[8]Courts have uniformly held that parties' agreement to the UNCITRAL Rules constitutes "clear and unmistakable" evidence of their intent to empower arbitrators to decide arbitrability in the first instance. *See Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 394 (2d Cir. 2011) (incorporation of the UNCITRAL arbitration rules is clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability); *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074-75 (9th Cir. 2013) (same); *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 73-74 (2d Cir. 2012) (same).

1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985). A party cannot avoid arbitration merely by casting its claim in tort or statute. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999). As the Delaware Court already recognized, when the Arbitration Clause is "broad," then disputes that "touch matters" within the agreement are arbitrable. *Mitsubishi*, 473 U.S. at 625 n.13. "The resulting presumption of arbitrability . . . is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Alghanim*, 828 F. Supp. 2d at 653 (citation omitted)).

KD's objection to arbitrability based on the nature of its legal theories is easily dispatched, therefore, because its factual allegations here are virtually identical to those in its Delaware *verified* pleadings. Each of KD's claims against HGI, while nominally sounding in tort, plainly "arises from" or "is connected with" the LLC Agreement. Moreover, legal claims such as KD's have all been held arbitrable. *See Genesco*, 815 F.2d at 854-55 ("fraudulent inducement claims [KD's Count I] have long been held to be arbitrable as a matter of law. . . . [A]rbitration clause [covering] 'any controversy arising out of or relating to this contract' . . . is sufficiently broad to require arbitration of . . . fraudulent inducement claim"); *Gidatex s.r.l. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 420, 426 (S.D.N.Y. 1998) (fraud, unfair competition, misappropriation and unjust enrichment claims [KD Counts I-III, V] were arbitrable); *JLM Indus. Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 175, 182-83 (2d Cir. 2004) (claims for unfair competition [KD's Count II] and conspiracy [KD Counter VIII] are arbitrable); *First Eagle Sogen Funds, Inc. v. Bank for Int'l Settlements*, 2001 WL 1150323, at *2 (S.D.N.Y. Sept. 28, 2001) (conversion claim [KD's Count IV] was arbitrable); *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 668 (2d Cir. 1997) ("This claim [for unjust enrichment] [KD's Count

V] is naturally dependent on appellants' rights under the [contract] and also touches matters covered by the [contract]; thus, the unjust enrichment claim is also subject to mandatory arbitration."); *Brandle Meadows, LLC v. Bette*, 84 AD3d 1579, 1581 (N.Y. App. Div. 2011) (compelling arbitration of tort claims of tortious interference [KD's Counts VI and VII] where there was a reasonable relationship to the underlying contract).

2.      HGI's Status as a Limited Signator To The
        Contract Does Not Deprive It Of The Right To Arbitrate

The Delaware Court has already rejected KD's contention that, because HGI signed the Agreement "solely for purposes of Clauses 13.4, 13.5, and 13.7," it cannot invoke arbitration under Clause 28. As the Court noted, KD disregards these limitations on HGI's obligations under the Agreement, because its claims assume "the applicability of the entire LLC Agreement to [HGI]." Aug. 26 Tr. at 11. *See also* Del. ¶ 7 ("HGI is a party to the LLC Agreement.")  Simply put, KD "'cannot have it both ways. It cannot rely on the contract, when it works to its advantage, and repudiate it when it works to its disadvantage.'" *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 299 (S.D.N.Y.1997) (citation omitted).

Even if HGI is considered a non-signatory to the Arbitration Clause, it is nonetheless entitled to arbitration. As this Court has observed, non-signatories seeking to compel a signatory to arbitrate a dispute may rely on the doctrine of equitable estoppel, if (*a*) "'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed,'" and (*b*) there exists "'a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.'" *Alghanim*, 828 F. Supp. 2d at 648 (quoting *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126–27 (2d Cir. 2010)); *see also McLaughlin v.*

18

*McCann*, 942 A.2d 616, 627 (Del. Ch. 2008) ("It is not unusual for courts to require arbitration of claims involving parties who were not formally parties to an arbitration agreement, a situation that especially arises when affiliates of signatories are subject to or make claims. In such situations, it is harder for signatories to escape arbitration when, as here, the non-signatories consent." (collecting cases).  That "policy is even stronger in the context of international business transactions." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir. 1991) (citation omitted).

Here, KD intentionally "intertwines" its claims against HGI in this case with its contract claims against HUSA in the Delaware case, making identical factual allegations against each. *See* p. 6-7. *supra*. And KD itself pleads a close relationship between itself and HGI, since it claims that HGI is bound to the terms of the LLC Agreement no less than HUSA. *Id*. Thus, if the Court decides that it should determine the arbitrability of KD's claims against HGI, it should hold that KD is required to arbitrate this dispute and dismiss KD's lawsuit in favor of arbitration.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF

Alternatively, KD's claims must be dismissed for failure to state any plausible claim to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (To avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level.")

### A.    The LLC Agreement Bars KD's Claims For Fraud

KD's claim to have been fraudulently induced to enter into the LLC Agreement is barred by the "no reliance" clauses of that Agreement. KD agreed that the LLC Agreement "constitutes the entire agreement and supersedes any previous agreements between the Parties relating to the subject matter of this Agreement." Cl. 24.1. KD also "acknowledge[d] and represent[ed] that it has not relied on or been induced to enter into this Agreement by a representation, warranty or

19

undertaking (whether contractual or otherwise) given by the other Parties . . . *or any adviser or provider of finance to the other Parties* . . . other than as set out in this Agreement or each document referred to in it (Cl. 24.2, 24.3).[9] Indeed, one of KD's principal allegation of "fraud"—Harvest's representation that it "was eager and 'keen' to distribute ETFs through the Company (¶¶ 132-33)—flatly contradicts the plain language of the Agreement, which states that ETFs are "Excluded" from the business of the Company. *See* Cl. 13.4. KD's fraud claim, therefore, is barred. *See Valassis Communc'ns, Inc. v. Weimer*, 304 A.D.2d 447, 447-48 (N.Y. App. Div. 2003) (in light of no-reliance clause, it was "plain that plaintiffs possess no viable claim for fraud"); *Lucas v. Oxigene, Inc.*, 1995 WL 520752, at *4 (S.D.N.Y. Aug. 31, 1995) (merger clause barred fraud claim).

### B.   Each of KD's Tort Claims Is Barred As Duplicative Of Its Contract Claims

Each of KD's tort claims fails to state a claim, because each is merely a "dressed-up" claim for breach of the LLC Agreement. KD never identifies any non-contractual duty of HGI independent of the LLC Agreement. *Trump Int'l Hotel & Tower v. Carrier Corp.*, 524 F. Supp. 2d 302, 313 (S.D.N.Y. 2007) ("Given the absence of any legal duty independent of the [contract, plaintiff] cannot unilaterally transform its action for breach of warranty and/or contract into a tort claim for negligence."). KD's appeals to the relationship of intra-party "trust" (¶¶ 36, 41) are insufficient to sustain a claim in tort. *See Best Western Int'l v. CSI Int'l Corp.*, 1994 WL 465905,

---

[9] Because KD claims that HGI entered into the LLC Agreement through HUSA and is bound by each of its provisions, KD cannot contend that HGI receives none of the protections of the Agreement, including the "no reliance" clauses. In any event, KD can hardly deny that HGI, as HUSA's corporate parent that allegedly participated in the venture "through" HUSA, is not an "advisor" and "provider of finance" to HUSA, the representations and promises of which KD equally disclaimed in Clauses 24.2 and 24.3.

at *6 (S.D.N.Y. Aug. 23, 1994) (allegations that parties "long term business relationship" of "trust and confidence" created extra-contractual duty was "unavailing").

1.    <u>KD's Claim for Misappropriation is Duplicative</u>

KD's claim for "misappropriation" identifies no independently protectable information, only a laundry list of vague categories such as "intellectual capital, know-how, skill, business relationships, goodwill, and confidential and proprietary business plans, strategies and financial models" which apparently relate to KD's hopes and dreams to distribute ETFs. ¶ 141. KD's actual complaint is that HGI obtained this information by pretending to be interested in providing ETFs for distribution to the Company, when, according to KD, HGI had no such interest. ¶¶ 39-45. Other than in the most conclusory terms, KD does not allege that HGI had any specific or independent obligation to keep KD's discussions of its plans for an ETF business confidential.

Nor, except in equally conclusory terms, does KD allege how HGI made any unauthorized use of KD's information.[10] KD's complaint, rather is that HGI falsely represented its intent to form an ETF business, on which KD detrimentally relied by disclosing certain unspecified business information—in other words, a duplicative variant on its contract and fraud claims, which are expressly barred by the LLC Agreement's exclusion of ETFs from the parties' business relationship. *See* Cl. 13.4. As such, KD's claim for misappropriation is barred. *See Sandrino v. Michaelson Assocs., LLC*, 2012 WL 5851135, at *10 (S.D.N.Y. Nov. 19, 2012) (dismissing misappropriation claim that "reiterated the allegations which underlie [plaintiff's] breach of contract claim").

---

[10]KD alleges that HGI used its proprietary information to form a competing ETF venture with Deutsche Bank (¶¶ 51, 56), but the unsupported suggestion that Deutsche Bank had any need or desire for KD's knowledge of the ETF sector does not meet the *Iqbal/Twombly* plausibility standard.

2.    KD's Claims For Unfair Competition (Count III) Conversion
(Count IV), and Unjust Enrichment (Count V) and Are Duplicative

KD's claims for unfair competition and conversion are based on the same allegations as its misappropriation claim: that HGI misappropriated and exploited KD's unspecified ideas for an ETF business. ¶¶ 148-150, 153-155. For the same reasons, those claims are duplicative of KD's barred contract and fraud claims and must be dismissed. *See Orange County Choppers, Inc. v. Olaes Enterps., Inc.*, 497 F. Supp. 2d 541, 558 (S.D.N.Y. 2007) (dismissing unfair competition claims as duplicative of breach of contract claims); *B &C Realty, Co. v. 159 Emmut Props., LLC*, 106 A.D.3d 653, 656 (N.Y. App. Div. 2013) (dismissing conversion claims that "either duplicate the dismissed fraud claim, or they amount to a claim that defendants intentionally deprived it of the benefit of its bargain.").

3.    KD's Tortious Interference Claims (Counts VI ad VII) Are Duplicative

KD's claims for tortious interference alleging that HGI caused HUSA to breach the LLC Agreement are also duplicative of its contract claims. KD's Complaint never identifies a breach of contract by HUSA that HGI could have possibly induced—a failure that bars any claim for tortious interference. *Compare* ¶¶ 164-65 (the only references to HUSA) *with World Wide Commnc'ns., Inc. v. Rozar*, 1997 WL 795750, at *7-8 (S.D.N.Y. Dec. 30, 1997) (Buchwald, J.) (collecting cases). Indeed, the Complaint alleges wrongdoing only by HGI and HFM. *See JHH Pictures, Inc. v. Rawkus Ent. LLC*, 739 N.Y.S.2d 26 (N.Y. App. Div. 2002) (dismissing duplicative tortious interference claims).

Furthermore, New York law does not recognize a claim of tortious interference with HGI's own contract. *TVT Records v. Island Def Jam Music Gp*., 412 F.3d 82, 88 (2d Cir. 2005). Neither does it recognize a claim of tortious interference between contracting parties and their parent or sister companies. *MTI/The Image Gp., Inc. v. Fox Studios East, Inc*., 262 A.D.2d 20

(N.Y. App. Div. 1999) (error not to dismiss a tortious interference claim where all named companies were either parent or sister companies).[11]

### C.   KD's Tort Claims Are Barred By Delaware Statute

KD's multi-claim Complaint alleges that its disclosures of trade secrets pursuant to the LLC Agreement, which is governed by Delaware Law. *Compare* ¶¶ 2, 41 *with* Cl. 27. The Delaware Uniform Trade Secrets Act ("**DUTSA**"), 6 DEL. CODE ANN. § 2007(a), preempts common law claims that are "grounded in the same facts which purportedly support the [m]isappropriation of [t]rade [s]ecrets claim." *Ethypharm S.A. France v. Bentley Pharms.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005). Accordingly, to the extent KD's tort claims are grounded in its allegations of misappropriation of trade secrets (Claims I, III-V, VIII ¶¶ 136, 150, 153, 156, 158, 160, 173, 177), they are barred by DUTSA. *See id.*

### D.   KD's Conversion Claim Is Premature

Plaintiff admits that it voluntarily disclosed its trade secrets to HGI pursuant to the LLC Agreement. *See* ¶ 41. "Where the original possession is lawful,[12] a conversion does not occur until the [party charged] refuses to return the property after demand or until he sooner disposes of the property." *Ardis Health, LLC v. Nankivell*, 2012 WL 5290326, at *9-10 (S.D.N.Y. Oct. 23, 2012) (Buchwald, J.) (internal quotation omitted) (collecting cases). KD appears to concede that

---

[11] KD's allegations likewise fail the more exacting requirements of claims for tortious interference with prospective business relations. *See Camp Summit of Summitville, Inc. v. Visinki*, 2007 WL 1152894, at *15 (S.D.N.Y. Apr. 16, 2007) (dismissing interference with prospective business relations claim where plaintiff "is essentially reiterating her . . . interference with contract claim").

[12] The "demand" requirement is applicable only in instances where the initial possession was lawful. *See Ardis Health,* 2012 WL 5290326, at *9-10. KD's reliance on cases in which the defendant's initial possession was unlawful, *see* Dkt. 9, Ground 6 (citing *Joe Hand Promotions, Inc. v. Zyller*, 2014 WL 59979, at *5 (E.D.N.Y. Jan. 7, 2014)) is thus misplaced.

it has yet to demand the return of any allegedly converted property. *See* R. Dec., Ex. E at Ground 6. Accordingly, no conversion has yet occurred and KD's claim must be dismissed.

E.     **KD Lacks Standing To Recover For HK LLC's Injuries**

KD appears to agree that it lacks standing to recover for injury to the HK LLC, including its claims for corporate mismanagement, waste, lost revenues, and "sabotage" of HK LLC (*see* Claims I, III, V-VIII ¶¶ 136, 165, 170, 175, 177). *See* R. Dec., Ex. E at Ground 3 (claiming only that its misappropriation claims were non-derivative). It is well settled that such harms are "paradigmatic" derivative claims that belong to the Company; and KD lacks standing to recover for them. *See Stephenson v. Citco Gp., Ltd.*, 700 F. Supp. 2d 599, 610-11 (S.D.N.Y. 2010) (noting that claim for mismanagement, is "a paradigmatic derivative claim"); *Metro Comm'n Corp. BVI v. Adv. Mobilecomm'n Tech., Inc.*, 854 A.2d 121, 167-68 (Del. Ch. 2004) (claims were derivative because "[a]ny harm that [plaintiff] suffered in this regard, such as lost potential profits from the scuttled IPO, is entirely contingent on harm suffered by [the LLC]").

F.     **Plaintiff Fails To State A Claim For Conspiracy**

KD's failure adequately to allege any substantive tort claim, requires dismissal of its conspiracy claim. *Kirch v. Liberty Media Corp.*, 2004 WL 2181383, at *11 (S.D.N.Y. Sept. 27, 2004) (Buchwald, J.). In addition, KD fails to identify the requisite "two" conspirators necessary to form a conspiracy: HFM is alleged only to have had "knowledge" of its subsidiary's acts (¶ 176); which is insufficient" to confer liability for as a co-conspirator. *See Trautz v. Weisman*, 809 F. Supp. 239, 246 (S.D.N.Y. 1992).

## CONCLUSION

For the foregoing reasons, Defendant HGI respectfully requests that the Court dismiss KD's Complaint in its entirety, without leave to replead, or, in the alternative stay the proceedings pending arbitration.

Dated: September 19, 2014
New York, New York

OBERDIER RESSMEYER LLP


By: ___/s/ Carl W. Oberdier___
    Carl W. Oberdier
    Kellen G. Ressmeyer
655 Third Avenue, 28th Floor
New York, New York 10017
(212) 659-5141

*Counsel for Harvest Global Investments, Ltd.*